[Cr. A. No. 580.  Appellate Department, Superior Court, Los Angeles County.—April 24, 1931.]

THE PEOPLE, Respondent, v. DON YATES, Appellant.

[1 Cal. Supp. 131.]

Ernest R. Simon for Appellant.

Charles P. Johnson, City Prosecutor, and John L. Bland and Joe W. Matherly, Deputies City Prosecutor, for Respondent.

THE COURT.—The appellant was prosecuted on a complaint charging that wilfully and without lawful excuse he omitted "to furnish necessary food, clothing, shelter, and medical attendance for his minor child, 1 unborn, five months in gestation". After trial by a jury he was found guilty and placed on probation. No judgment was pronounced against him, but his motion for a new trial was denied, and he appeals from the order denying this motion.

He also made a motion in arrest of judgment, which was denied, and he appeals from this order also.

This case requires a construction of the provisions of section 270 of the Penal Code, as amended in 1925. (Stats. 1925, p. 544.) As then amended the section provides:

"A father of either a legitimate or illegitimate minor child who wilfully omits without lawful excuse to furnish necessary food, clothing, shelter or medical attendance or other remedial care for his child is guilty of a misdemeanor and punishable by imprisonment in the county jail not exceeding two years or by a fine not exceeding one thousand dollars, or by both. This statute shall not be construed so as to relieve such father from the criminal liability defined herein for such omission merely because the mother of such child is legally entitled to the custody of such child nor because the mother of such child, or any other person, or organization, voluntarily or involuntarily furnishes such necessary food, clothing, shelter or medical attendance or other remedial care for such child, or undertakes to do so.

"Proof of abandonment or desertion of a child by such father, or the omission by such father to furnish necessary food, clothing, shelter or medical attendance or other remedial care for his child is *prima facie* evidence that such abandonment or desertion or omission to furnish necessary food, clothing, shelter or medical attendance or other remedial care is wilful and without lawful excuse. . . . A child conceived but not yet born is to be deemed an existing person in so far as this section is concerned."

By the amendment the words "other remedial care", wherever they appear, and the last sentence above quoted were added to the section. Until the addition was made, the section had no application to an unborn child. (*Bull* v. *State,* 80 Ga. 704 [6 S. E. 178]; *Shelton* v. *State,* 19 Ga. App. 618 [91 S. E. 923].) Reference to the history of this section and the course of decision under it discloses that it has been gradually broadened and extended in operation so as to include cases which had been previously excluded, until now it imposes on the father a duty in respect even to his unborn child. In order to decide this case we must ascertain the extent of that duty. As far as we can learn, there are no precedents to guide us, either here or in any other jurisdiction. The statute appears to

be a novel piece of legislation. The duty as to unborn children is imposed in the same language which applies to children already born, that is, the father must furnish "necessary food, clothing, shelter or medical attendance or other remedial care for his child". ▮ One of the facts requisite to constitute an offense under this statute is that the food, etc., be necessary for the child. This fact is not covered by any of the presumptions declared in the section. The prosecution must affirmatively establish it. ▮ Under the provisions of the statute, as it now stands, declaring that the furnishing of necessary food, etc., by others affords no defense to the father for his failure to furnish them, the mere proof of the existence of a child already born is a sufficient showing against its father, of its need for food, clothing and shelter, for these needs are common to all mankind. This would not be true of medical attendance and other remedial care, and in a prosecution based on failure to furnish them, it would be incumbent on the prosecution to make affirmative proof of their necessity.

Is there any difference in the rule as to food, clothing and shelter between a child already born and one unborn? If so, it must arise merely from the nature of the case, and not from the language of the section. It is obvious that food, clothing and shelter cannot be furnished directly to an unborn child. The same is true of medical attendance and other remedial care. ▮ Consequently we cannot limit the meaning of necessities, in the case of an unborn child, to those which can be directly furnished to it, for to do so would deprive the addition made to the section in that respect in 1925 of any meaning or effect—a result which is to be avoided, if possible, in construing statutes. (23 Cal. Jur. 758.) (*Glassell Dev. Co.* v. *Citizens' Nat. Bank*, 191 Cal. 375, 384 [28 A. L. R. 1427, 216 Pac. 1012].) ▮ We must, therefore, hold that, as to unborn children, the statute contemplates indirect necessities, or those which are to be furnished through the mother. It is manifest that if the mother were without food, clothing or shelter her health would be impaired, and if such condition were carried to the extreme her death would follow. Such impairment of health would adversely affect the child she was carrying and her death would be fatal to it. Can it be said that necessities furnished the mother, the lack

of which would so affect the child, are not furnished to the child also? We believe not.

Moreover, every child, while in gestation, needs the materials from which to form bone, tissue, nerves and the other components of its bodily structure. Without them it cannot grow or develop, or even continue to live. It can receive these materials directly only from its mother, but in a very real, though indirect, sense they come from the food which the mother consumes, and that food is necessary for the child, as well as the mother. It is also necessary for the child's welfare that the mother be provided with clothing and shelter, at least so far. as the lack of these things might materially impair her ability to supply her child with the life-giving and body-building materials which it must derive from her. In the somewhat analogous case of a nursing infant, it has been held that it is dependent on its father for food, clothing and shelter, and he is subject to criminal prosecution for failing to furnish them. (*Chandler* v. *State*, 38 Ga. App. 362 [144 S. E. 51]; *Campbell* v. *State*, 20 Ga. App. 190 [92 S. E. 951].)

It is true, the statute in question imposes on the father no duty to support the mother of his child. But neither does it in terms require him to raise crops or build a house, although at some times and under some circumstances it may be necessary for him to do so in order to provide food or shelter for his children. We apprehend that a father whose children were exposed to the storms of winter and who should fail or refuse to construct, from materials at hand, or otherwise provide, a shelter for them, could not escape responsibility for his neglect by the plea that the statute did not require him to conduct building operations, or that the mother of the children might take refuge in the same shelter. What the statute requires of the father is that he provide his child with necessary food, etc. It does not concern itself with the means by which he may do so, whether the child be born or unborn. It allows him to resort to such means as may be available and appropriate to the end in view, the support of the child. If the child, being unborn, cannot be directly reached for the purpose of providing it with sustenance, nature points out that sustenance furnished the mother will inure to its benefit through her. If in the process

some of that sustenance also goes to her support, that is an incident which cannot be avoided, by reason of the nature of the case, but does not render any the less imperative the law's command that the child must be nourished.

■ Our conclusion is that in the case of an unborn child, no less than in case of one which is born, mere proof of its existence shows such a necessity for food, clothing and shelter as imposes on the father a duty to provide them. The only difference between the cases is that of necessity provision for the unborn child can be made only through the mother as an intermediary. Where nothing at all in the way of food, clothing or shelter is furnished by the father to the expectant mother, which is the case before us, a breach of duty on his part is shown. If something is furnished, it will then usually be a question of fact for the jury whether that something satisfies the rule of necessity. ■ In the case of medical attendance or other remedial care, something further is essential in the way of a showing that the child, as distinguished from the mother, will be adversely and substantially affected by the lack of them. The conviction here could not be sustained for failure to furnish medical attendance. The mother testified that she consulted a physician "on account of" her pregnancy, but there is no showing that this consultation was necessary for the child. The evidence is, however, sufficient to uphold the conviction for failing to furnish food, clothing and shelter.

■ We are not concerned with the questions whether appellant's neglect was wilful or without lawful excuse. As to both of these matters, the statute creates a presumption against him, as soon as it is shown that he has failed to provide necessary food, etc. This part of the statute is valid. (*In re Bryant* (1928), 94 Cal. App. 791 [271 Pac. 926].) He made no attempt at the trial to rebut this presumption. He did attempt to show that he was not the father of the child, but the evidence was amply sufficient to sustain the finding against him on this point.

■ He knew of the existence of the child. It thereupon became his duty to ascertain and supply its needs in respect to the matters pointed out by the statute. No demand upon him to perform this duty is required by the statute,

and none is necessary to subject him to its penalties. (46 Cor. Jur. 1352, sec. 211; *Campbell* v. *State, supra.*)

█ Appellant attacks the constitutionality of this statute on the ground that it is uncertain and defines as a crime acts which can only rest upon conjecture and hypothesis. The same provision applies to all children, whether born or unborn. If it is uncertain as to one it must be as to the other. The language requiring the furnishing of "necessary food, clothing, shelter or medical attendance" has been in this section since it was first enacted in 1872, and it seems never to have been attacked for uncertainty, nor do we find any fatal uncertainty in it. In the nature of things no specific and precise rule can be made on the subject. The statute points out certain kinds of care and requires the father to furnish them as necessary. The necessity is capable of ascertainment by proof to be submitted to the jury. In *Ex parte Daniels* (1920), 183 Cal. 636, 646 [21 A. L. R. 1172, 192 Pac. 442], the Supreme Court held that a statute making it unlawful to drive a motor vehicle at an unreasonable or unsafe speed was not void for uncertainty. The provisions of section 270 are at least as certain as the statute there upheld.

█ The appeal, it will be noted, was from the order denying appellant's motions for an arrest of judgment and for a new trial. Are these orders appealable? By section 1466 of the Penal Code, found in the chapter entitled, "Appeals to Superior Courts," it is provided that "Either party may appeal to the superior court of the county from a *judgment* of a municipal court or from a *judgment* of a justice's or police court, in like cases and for like causes as appeals may be taken in the Supreme Court or to a court of appeal." (Italics ours.) No authority is found within this section itself for an appeal from an order denying a motion for arrest of judgment, nor is appellant aided by reference, for from such an order an appeal will not lie to the Supreme Court, *People* v. *Martin* (1922), 188 Cal. 281 [21 A. L. R. 1399, 205 Pac. 121], nor to a (District) Court of Appeal, *People* v. *Pettinger* (1928), 94 Cal. App. 297 [271 Pac. 132]. The appeal from this order must be dismissed.

Section 1466 in terms authorizes an appeal from a "judgment" only, and if that word is given its strict technical meaning, the conclusion follows that an appeal does not lie from an order denying a motion for a new trial. Such a restricted use of the term, however, is so inconsistent with other provisions that we do not believe the legislature used it in its technical sense. In section 1467, for example, "The appeal may be taken . . . within ten days after the order is made from which the appeal is taken." In section 1468 we find again presented the same use of terms, inexplicable if limited to their technical meaning. The section provides what the record shall be on an appeal from a "judgment" and concludes with the provision: "If no statement is filed and served as herein provided . . . the judgment or order appealed from shall be enforced as if no appeal had been taken." If in section 1467 and section 1468 an appeal from a "judgment" excluding an "order" is contemplated, then the provisions respecting the time within which an appeal may be taken from an order and the reference to the order appealed from are robbed of all meaning. As already stated, such an interpretation should be avoided if possible, and is avoided by assigning to the word "judgment" the definition given in Funk & Wagnall's Standard Dictionary: "the final order of the court; decision". See, also, *People* v. *Hartman*, (1913) 23 Cal. App. 72 [137 Pac. 611]. We are of the opinion that an appeal will lie from an order of the municipal court denying a motion for a new trial. In *People* v. *Campbell*, (1930) 110 Cal. App. Supp. 783 [291 Pac. 161], we expressed a contrary conclusion in a case where, because we could and did review all errors complained of on the appeal from the judgment, we did not look beyond the language of section 1466 for the legislative intent.

The order denying the motion for a new trial is affirmed, and the appeal from the order denying appellant's motion in arrest of judgment is dismissed.

BISHOP, J., Dissenting.—I concur in the opinion that the appeal from the order denying a motion for arrest of judgment should be dismissed. I concur also in all that is said about the right to appeal from an order denying a new trial. But I dissent from the affirmance of that order in this

case. I am in complete accord with the policy of holding men responsible for supplying their children with necessary food, clothing and shelter. Nor should one expect in this day when it is the vogue to make people good by law and to supplement social sanctions with provisions for penal servitude to find an exception here. But the protection of the helpless young does not require that there should be removed from those charged with crime the protection that "penal statutes must be construed to reach no further than their words". (*People* v. *Tisdale*, (1880) 57 Cal. 104; *In re Twing*, (1922) 188 Cal. 261, 265 [204 Pac. 1082].)

By the construction put upon section 270 by the court's opinion, a man, upon the conception of a child, becomes criminally responsible for supplying the expectant mother with food, clothing and shelter, notwithstanding this responsibility is nowhere suggested in that section. Why this interpretation? Because our imagination is not equal to that of the legislature's, and we are unable to see how a man can furnish an unborn child with food, clothing and shelter, or how the unborn child may find these necessities when it wears no clothes, is provided by nature with a shelter perfect for its needs, and receives its "food" from a source for which there is no substitute of man's furnishing. My conclusion from this state of facts is that if a man cannot do what the statute requires, then he should not be made to run the risk of two years' imprisonment because he does not do something else. If there was a need in this case beyond that which nature supplies and man cannot, the evidence upon which the conviction rests fails to reveal it.

The legislature has already provided that a man must furnish his wife with food, clothing and shelter whether she is with child or not. (Pen. Code, sec. 270a.) If it is wise to extend this responsibility to expectant mothers, who are not wives, it should be done by the legislature and not by judicial interpretation.