[Crim. No. 91. Fourth Appellate District.—September 27, 1933.]

THE PEOPLE, Appellant, v. LUCAS SIANES, Respondent.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Appellant.

R. Y. Williams for Respondent.

BARNARD, P. J.—In an information filed by the district attorney of Orange County the defendant was charged with failing to support his minor child, alleged to have been committed as follows:

"That the said Lucas Sianes on or about the 1st day of January, 1933, at and in the County of Orange, State of California, and before the filing of this Information, did wilfully, and unlawfully omit, without any lawful excuse, to furnish necessary food and medical attendance and other remedial care for his minor child, to-wit: a child conceived, but not yet born."

This appeal is from an order sustaining a demurrer to the information without leave to amend.

The pertinent portion of section 270 of the Penal Code, upon which this information was based, reads as follows:

"A father of either a legitimate or illegitimate minor child who wilfully omits without lawful excuse to furnish necessary food, clothing, shelter or medical attendance, or other remedial care for his child is guilty of a misdemeanor . . . A child conceived but not yet born is to be deemed an existing person in so far as this section is concerned."

The present controversy relates to the last sentence of this section, which was added by amendment in 1925.

As here presented, the first point raised is one urged by the respondent to the effect that it is not possible to state a public offense with reference to a failure to make provision

for an unborn child, since the amendment referred to fails to provide that the offense covered by the section shall also apply to an unborn child. It is argued that while this amendment provides that a child conceived but not yet born is to be deemed an existing person it does not provide that such an unborn child is to be deemed an existing child or an existing minor child; that the original section does not relate to all existing persons, but is limited to such existing persons as are minor children; and that by sections 25 and 26 of the Civil Code the period of minority of a child is fixed as being that from the date on which it is born to the date on which it reaches the age of twenty-one. Apparently the contention is that within the meaning of this section an unborn child is not a minor child and, therefore, an information attempting to charge a failure to make provision for an unborn child fails to state facts sufficient to constitute a public offense.

We think this contention is without merit. Under the amendment in question an unborn child is to be deemed an existing person "in so far as this section is concerned". The entire section relates to support and provision for minor children only, and to be deemed an existing person for the purposes of the statute is to be deemed a minor child. The plain wording of the amendment, read with the rest of the section, makes an unborn child an existing minor child within the meaning of the act, irrespective of the general period of minority as covered in other connections by other code provisions. It is objected that the legislature should have "stated that the offense applied to an unborn child". This the legislature has done in language sufficiently definite and certain to leave no doubt as to its meaning.

Another question presented, but not argued, is whether a man may be compelled to make the provision required by the statute, in the case of an unborn child, indirectly, when it is obviously impossible to furnish the same directly to the child. This question was considered in *People* v. *Yates,* 114 Cal. App. (Supp.) 782 [298 Pac. 961, 962]. We are in accord with the main opinion in that case, from which we quote the following:

"Is there any difference in the rule as to food, clothing and shelter between a child already born and one unborn? If so, it must arise merely from the nature of the case,

and not from the language of the section. It is obvious that food, clothing and shelter cannot be furnished directly to an unborn child. The same is true of medical attendance and other remedial care. Consequently we cannot limit the meaning of necessities, in the case of an unborn child, to those which can be directly furnished to it, for to do so would deprive the addition made to the section in that respect in 1925 of any meaning or effect—a result which is to be avoided, if possible, in construing statutes. (23 Cal. Jur. 758.) (*Glassell Dev. Co.* v. *Citizens' Nat. Bank,* 191 Cal. 375, 384 [28 A. L. R. 1427, 216 Pac. 1012].) We must, therefore, hold that, as to unborn children, the statute contemplates indirect necessities, or those which are to be furnished through the mother. It is manifest that if the mother were without food, clothing or shelter her health would be impaired, and if such condition were carried to the extreme her death would follow. Such impairment of health would adversely affect the child she was carrying and her death would be fatal to it. Can it be said that necessities furnished the mother, the lack of which would so affect the child, are not furnished to the child also? We believe not.

"Moreover, every child, while in gestation, needs the materials from which to form bone, tissue, nerves and the other components of its bodily structure. Without them it cannot grow or develop, or even continue to live. It can receive these materials directly only from its mother, but in a very real, though indirect, sense they come from the food which the mother consumes, and that food is necessary for the child, as well as the mother. It is also necessary for the child's welfare that the mother be provided with clothing and shelter, at least so far as the lack of these things might materially impair her ability to supply her child with the life-giving and body-building materials which it must derive from her. In the somewhat analogous case of a nursing infant, it has been held that it is dependent on its father for food, clothing and shelter, and he is subject to criminal prosecution for failing to furnish them. (*Chandler* v. *State,* 38 Ga. App. 362 [144 S. E. 51]; *Campbell* v. *State,* 20 Ga. App. 190 [92 S. E. 951].)

"It is true, the statute in question imposes on the father no duty to support the mother of his child. But neither

does it in terms require him to raise crops or build a house, although at some times and under some circumstances it may be necessary for him to do so in order to provide food or shelter for his children. We apprehend that a father whose children were exposed to the storms of winter and who should fail or refuse to construct, from materials at hand, or otherwise provide, a shelter for them, could not escape responsibility for his neglect by the plea that the statute did not require him to conduct building operations, or that the mother of the children might take refuge in the same shelter. What the statute requires of the father is that he provide his child with necessary food, etc. It does not concern itself with the means by which he may do so, whether the child be born or unborn. It allows him to resort to such means as may be available and appropriate to the end in view, the support of the child. If the child, being unborn, cannot be directly reached for the purpose of providing it with sustenance, nature points out that sustenance furnished the mother will inure to its benefit through her. If in the process some of that sustenance also goes to her support, that is an incident which cannot be avoided, by reason of the nature of the case, but does not render any the less imperative the law's command that the child must be nourished.''

By its plain provisions this statute has been so extended as to include this responsibility of a father to his unborn child. In our opinion it is entirely possible, under the provisions of the statute, to so word an information as to allege a public offense with reference to a failure to make the required provision for an unborn child.

■ More specifically, it urged that this particular information does not substantially conform to the requirements of sections 950, 951 and 952 of the Penal Code, in that it cannot be determined therefrom ''who the person is that defendant is charged with failing to support''. Without question this fact cannot be determined from the information and it seems equally certain that this is a fact of which the defendant should be apprised in order to enable him to meet the charge. While ordinarily an offense may be alleged in the words of the statute, it should be in words sufficient to give the accused notice of the particular offense with which he is charged and must be sufficient to enable a

person of common understanding to know what offense was intended. In this respect the information under consideration is defective. The demurrer was properly sustained upon that ground but, for the reasons stated above, an amendment should have been permitted.

The order appealed from is reversed, with directions to the trial court to sustain the demurrer with permission to amend the information.

Marks, J., and Jennings, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 26, 1933.